# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

BARBARA J. RILEY,

        Plaintiff,

                                           Case No. 3:16-cv-898-J-34JBT

vs.

DANIEL D. DONATELLI, et al.,

        Defendants.

_____/

# O R D E R

**THIS CAUSE** is before the Court on several motions.  Plaintiff Barbara J. Riley, pro se, initiated this action on July 13, 2016.  See Complaint Verified and Demand for Jury Trial (Doc. 1; Complaint).  The Court promptly struck the Complaint on July 15, 2016, for failure to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure (Rule(s)), see Order (Doc. 4), and on August 19, 2016, Riley filed an Amended Complaint Verified and Demand for Jury Trial (Doc. 5; Amended Complaint).  In her Amended Complaint, Riley asserts claims under "42 U.S.C. §§ 1983, 1985, and 1988" against Defendants Daniel D. Donatelli, Jennifer E. Traystman, Curtis V. Trinko, Joseph N. Froehlich, Jonathan E. Samon, Brian P. Scibetta, and Patricia A. Rivers.[1]  Id. at 1.  The Court has dismissed Riley's claims against Jennifer Traystman, Jonathan Samon, Brian Scibetta, and Joseph N. Froehlich without prejudice, see Order (Doc. 49), entered December 21, 2016; Order (Doc. 68), entered February 24, 2017, such that Daniel D. Donatelli, Curtis V. Trinko, and Patricia A. Rivers (Defendants) are the only remaining Defendants to this action.  These three

---

[1]      On July 19, 2016, Riley also filed Plaintiff's Affidavit in Support of Amended Complaint Verified (Doc. 6; Riley Aff.).  Riley filed a nearly identical Plaintiff's Affidavit in Support of Amended Complaint Verified (Doc. 97), on May 19, 2017.

Defendants have each filed motions to dismiss pursuant to Rule 12(b).  See Defendant, Daniel D. Donatelli, Esquire's Motion to Dismiss Plaintiff's Amended Verified Complaint, and Incorporated Memorandum of Law (Doc. 13; Donatelli Motion), filed September 29, 2016;[2] Defendant Curtis V. Trinko, Esquire's Motion to Dismiss Plaintiff's Amended Verified Complaint, and Incorporated Memorandum of Law (Doc. 17; Trinko Motion), filed October 13, 2016; Pro Se Defendant Patricia A. Rivers' Motion to Dismiss Plaintiff's Amended Verified Complaint, and Incorporated Memorandum of Law (Doc. 90; Rivers Motion), filed May 5, 2017, (collectively, Motions).  Riley responded to each of these Motions.  See Plaintiff's Response Verified re 13 Unlicensed Attorney Ramsey's Unsigned Empty Motion to Dismiss with Memorandum of Legal Authorities in Support and 2 Exhibits #1 and #2 (Doc. 34; Response to Donatelli), filed November 16, 2016; Plaintiff's Response Verified re 17 Trinko's Empty Motion to Dismiss with Memorandum of Legal Authorities in Support and 2 Exhibits A and B (Doc. 35; Response to Trinko);[3] Pro Se Plaintiff's Response re: Pro Se Defendant Patricia A. Rivers' Motion to Dismiss Plaintiff's Amended Verified Complaint

---

[2]     On October 24, 2016, Donatelli also filed a request for the Court to take judicial notice, to which Riley responded.  See Defendant, Daniel D. Donatelli, Esquire's, Notice of Filing Exhibit A in Support of Defendant's Motion to Dismiss Plaintiff's Verified Amended Complaint with Incorporated Memorandum of Law (Doc. 23; Request for Judicial Notice); Order (Doc. 25) (construing this filing as a motion and directing Riley to respond); Plaintiff's Response to Tort Intervenor Ramsey's Motion for Judicial Notice with 3 Exhibits Attached (Doc. 32), filed November 9, 2016; Affidavit of Service (Doc. 30), filed November 8, 2016.

[3]     Riley initially responded to the Donatelli and Trinko Motions by simultaneously filing responses and motions to "set aside" the Motions to Dismiss, purportedly under Rule 60, which described the Motions to Dismiss as "simulated proceedings."  See Affidavit of Pro Se Plaintiff Barbara J. Riley in Opposition to Attorney Richard E. Ramsey and His Law Firm's Motion to Dismiss, Memorandum of Legal Authority in Support and Rule 60 Motion for Relief (Docs. 16, 18); Affidavit of Pro Se Plaintiff Barbara J. Riley in Opposition re 17 Default Defendant's Trinko Untimely Motion to Dismiss, Memorandum of Law in Support and Rule 60 Motion for Relief (Docs. 20, 21).  On October 19, 2016, the Court denied these motions and directed Riley to properly respond to the Motions to Dismiss.  See Order (Doc. 22).  In accordance with the Court's Order, Riley filed the Response to Donatelli and Response to Trinko identified above.

Not Filed Yet with Incorporated Memorandum of Law (Doc. 92; Response to Rivers),[4] filed May 10, 2017 (collectively, Responses). Accordingly, this matter is ripe for review.[5]

## I.    Background

This case arises out of a dispute over real property located in New York which, according to Riley, Defendants Daniel D. Donatelli and Patricia A. Rivers stole from Riley's "ancestor-mother" in 2004 through "frauds, forged wills and schemes." See Amended Complaint ¶¶ 13-14; Riley Aff., Ex. A. Riley alleges that her mother died in 2005 and since that time, Donatelli and Rivers "swore to all that there is a Will and that the 2003 newly rebuilt premises was willed to [Rivers]." Amended Complaint ¶¶ 19-20. In addition, Riley alleges that over the span of ten years from 2004 until 2014, Donatelli and Rivers also

---

[4]    Rivers also filed a declaration in support of her Motion. See Pro Se Defendant Patricia A. Rivers' Declaration in Support of Her Motion to Dismiss Plaintiff's Amended Verified Complaint (Doc. 91; Rivers Decl.), filed May 5, 2017. As such, in conjunction with her Response to Rivers, Riley filed a Pro Se Plaintiff's Affirmation Rebutting the False and Falsified re: Pro Se Defendant Patricia A. Rivers' Declaration in Support of Her Motion to Dismiss Plaintiff's Amended Verified Complaint Not Filed with Plaintiff's 4 Attachments as Exhibits A to D (Doc. 94; Riley Decl.).

[5]    The Court notes that Riley denotes a significant portion of her Responses to baseless, personal attacks on Defendants, as well as Richard E. Ramsey and Kelsey L. Amsdell, the attorneys representing Donatelli. Riley's accusations are unsupported and improper, and her contention that Donatelli's attorneys are not authorized to represent him in this Court is frivolous. Riley is cautioned that this manner of litigating not only does nothing to advance her claims, but could also lead to the imposition of sanctions against her. Nonetheless, the Court has endeavored to carefully parse the Responses for any arguments that might be relevant to the actual substance of the Motions.
      Riley also filed a notice accusing the Clerk's Office staff of corruption, bias, prejudice and fraud. See Plaintiff's Notice Verified re The Deputy Clerks' Ongoing Documents Filing Fraud Scheme Constituting Fraud on the Court by the Duputy [sic] Clerks Involved (Doc. 36), filed November 30, 2016. Long on vitriol, and short on actual facts or evidence, the Court rejects Riley's accusations as entirely without merit. Indeed, although Riley accuses the Clerk's Office of refusing to file her documents, the Court notes that Riley does not identify a single document that she was unable to file, and the docket reflects that Riley has submitted briefs and evidence in response to all of Defendants' Motions, as well as all manner of other filings.
      In addition, Riley filed several documents notifying the Court of filings and complaints she has made in New York in connection with the lawsuit she filed in New York. See Pro Se laintiff's [sic] Notice of Filing Complaint with 3 NYC District Attorneys (Doc. 82); Pro Se laintiff's [sic] Notice of Filing Plaintiff's Complaint of Judicial Misconduct (Doc. 84); Pro Se laintiff's [sic] Notice of Filing Plaintiff's Impending Notice of Appeal Paid (Doc. 83), all filed on April 17, 2017. In response to these filings, on April 21, 2017, Donatelli filed a Notice of Filing (Doc. 87) as well. The Court has reviewed these documents and finds them irrelevant to the issues raised in the instant Motions.

"encumbered the stolen real property with 5 Deeds and 13 Mortgages, Assignments and Agreements . . . ."  Id. ¶ 25.  Riley asserts that she "recorded and filed" a deed to this property in 2015.  Id. ¶ 28.  Thereafter, on August 26, 2015, in the United States District Court for the Eastern District of New York, Riley filed a "Quiet Title action" against Rivers, as well as various mortgage holders or lenders with an interest in the property.  Id. ¶¶ 29, 35; Riley Aff., Ex. B.  While that lawsuit was still pending, Riley initiated the instant action in this Court which appears to stem from the litigation conduct of the opposing parties or their attorneys in the New York lawsuit.  Although the Amended Complaint contains no specific details, Riley generally accuses Rivers, Donatelli, and Trinko, Rivers' attorney in the New York lawsuit, of making false and fraudulent statements, and filing false and falsified documents, in connection with those proceedings.[6]  See Amended Complaint ¶¶ 31-35, 42-54.  According to Riley, by making false statements and filing false documents, Defendants "interfered" in her lawsuit and violated her Constitutional rights.  Id. ¶ 58, 66, 82, 94, 98.  In addition, Riley maintains that Defendants conspired together to violate her rights and deprive her of the real property, and that Trinko and Donatelli are engaged in a pattern of such conduct.  Id. ¶¶ 6, 8, 86-87, 90, 114, 118.

Notably, Riley alleges that Rivers, Trinko and Donatelli are citizens of New York.  Id. ¶ 4.  Indeed, Riley identifies Trinko and Donatelli as New York lawyers with offices in New York.  Id. ¶¶ 6, 8.  As is evident from the foregoing, the actions giving rise to this lawsuit occurred in New York, in connection with the lawsuit that Riley filed in New York, which

---

[6]     Donatelli was neither a party to, nor counsel of record in, the New York lawsuit.  See Riley Aff., Ex. B.  However, it appears that due to his prior role as the estates and trusts attorney for Riley's mother, see Amended Complaint ¶ 13, he submitted a declaration on behalf of Rivers in the New York lawsuit.  Id. ¶ 16; see also Riley Aff., Ex. B at 4.

pertained to real property located in New York.  The only connection to the State of Florida alleged in the Amended Complaint is that Riley is a citizen of Florida, whose mailing address is in Florida, and that Riley recorded and filed her deed to the property "[b]y operation of Florida laws." Id. ¶¶ 4, 5, 28.  Nonetheless, Riley maintains that venue in this Court is proper "pursuant to 28 U.S.C. § 1391(b) in that the cause of action arose within the Middle District of Florida and the Eastern District of New York Electronically and through the United States Mail." Id. ¶ 3.

## II.    Summary of the Arguments

In her Motion, Rivers moves for dismissal of this action pursuant to Rule 12(b)(2), (3), and (5).  See Rivers Motion at 1.  Specifically, Rivers argues that this Court lacks personal jurisdiction over her, this District is not a proper venue for Riley's lawsuit, and Riley failed to properly serve Rivers.  Id.  Rivers maintains that she has had no "personal or business contacts" with Riley or anyone else in the Middle District of Florida, and has never visited the State of Florida.  Id. at 3; see also Rivers Decl. ¶ 2.  In addition, Rivers maintains that venue in this Court is not proper because "[n]one of the factual activities alleged in the [Amended Complaint] occurred in the Middle District of Florida," "Defendant Rivers is not a Florida resident," and "the real property at issue in this action is located in Queens, New York." See Rivers Motion at 3; Rivers Decl. ¶ 3.  As to service of process, Rivers maintains that the Affidavit of Service executed by the process server is false.  See Motion at 1-2; Rivers Decl. ¶ 4.  According to the Affidavit of Service (Doc. 57), filed on January 25, 2017, the process server left a copy of the summons and Amended Complaint with Rivers' sister, Ivette Rivers, at Rivers' address, on October 22, 2016. See Affidavit of Service (Doc. 57), filed January 25, 2017.  However, according to Rivers, the process

server could not have accomplished service in this manner because Ivette Rivers does not live at Rivers' address and was not present at Rivers' home in October 2016. See Rivers Decl. ¶ 6.

In her Response, Riley contends that she effectuated proper service and that this action should be heard on the merits because she has a constitutional right to a jury trial and a "fraud on the court" occurred in New York. See generally Response to Rivers. In her Declaration, Riley also argues that this Court has personal jurisdiction over Rivers because Rivers' actions "affected [Riley's] civil rights in the Middle District of Florida and the Eastern District of New York (Brooklyn) using U.S. Mail, Wire, Computers and Telephones affecting interstate commerce for over a decade . . . ." See Riley Decl. ¶¶ 3, 17. Riley further maintains that Rivers knew Riley resided in Florida and that Rivers "has repeatedly undertaken actions against plaintiff Riley within the Middle District of Florida with regard to the allegations contained in the" Amended Complaint. Id. ¶¶ 5-6. Riley contends that as part of the New York lawsuit Rivers used the "U.S. Mail and Wire" to send court documents to Riley in Florida. Id. ¶ 7. Based on the foregoing, Riley argues that the Court should not dismiss her claims against Rivers.

In their Motions, Donatelli and Trinko seek dismissal on two grounds. Unlike Rivers, neither Donatelli nor Trinko assert a lack of personal jurisdiction as a defense to this case. Nonetheless, Donatelli and Trinko do contend that dismissal is warranted under Rule 12(b)(3) because this District is not a proper venue for this action. Specifically, Donatelli and Trinko argue that Defendants are not residents of Florida, all of the purportedly wrongful conduct occurred in New York, the property that is the subject of this dispute is located in New York, and the only purported connection to Florida is Riley's status as a

Florida resident.  See Trinko Motion at 7; Donatelli Motion at 9.  In addition, Trinko and Donatelli argue that this action is due to be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6).  Both Trinko and Donatelli contend that Riley fails to state a claim under § 1983 because Defendants did not act "under color of state law."  See Trinko Motion at 8-9; Donatelli Motion at 10-11.  They further maintain that Riley's claims premised on conspiracy, fraud or alleged violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act are due to be dismissed because Riley failed to plead these claims with the requisite particularity.  See Trinko Motion at 9-12; Donatelli Motion at 13-16.  Last, Donatelli and Trinko argue that the Amended Complaint is vague and conclusory, and should be dismissed as an impermissible shotgun pleading in violation of Rules 8 and 11.  See Trinko Motion at 11-12; Donatelli Motion at 17-19.

In her Responses to Donatelli and Trinko, Riley makes numerous allegations regarding the purportedly improper conduct of Defendants and the court in the New York lawsuit, and appears to contend that this action should not be dismissed "as a matter of equity or as a matter of due process."  See Response to Donatelli at 9; Response to Trinko at 10.  Although difficult to decipher, Riley's argument appears to be that the Court should deny the Motions because her claims are meritorious and the statements she made in her Affidavit are unrebutted.  In addition, she insists throughout her Responses that Defendants' actions were taken "under color of law."  Riley summarily concludes her Responses with the assertion that "[t]his Court has subject matter jurisdiction, in personam

jurisdiction and the venue is proper." <u>See</u> Response to Donatelli at 10; Response to Trinko at 10.[7]

## III.  Personal Jurisdiction

### A.  Standard of Review

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." <u>See</u> <u>United Tech. Corp. v. Mazer</u>, 556 F.3d 1260, 1274 (11th Cir. 2009). Where a defendant "challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" <u>See</u> <u>id.</u> (quoting <u>Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.</u>, 288 F.3d 1264, 1269 (11th Cir. 2002)). A district court has discretion to conduct an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction. <u>See</u> <u>Delong Equip. Co. v. Wash. Mills Abrasive Co.</u>, 840 F.2d 843, 845 (11th Cir. 1988). However, where the court does not conduct an evidentiary hearing, "the plaintiff must present only a prima facie showing of . . . personal jurisdiction." <u>Id.</u>

---

[7]      The Court notes that in her initial response to the Trinko Motion, <u>see</u> Doc. 20, Riley repeatedly asserted that Trinko's Motion was untimely. <u>See</u> Response to Trinko at 2, 5. Indeed, Trinko did serve his Motion three days late. <u>See</u> Trinko Motion at 14 (certifying service by mail on October 6, 2016); Proof of Service (Doc. 11) (indicating service of process effectuated on Trinko on September 12, 2016); Rule 12(a)(1)(A)(i), (b) (allowing a defendant twenty-one days to serve a responsive pleading after service of process, and instructing that a Rule 12(b) motion must be made before a responsive pleading); Rule 5(b)(2)(C) (providing that service is complete upon mailing). However, the Court has the discretion to "consider an otherwise untimely motion if, among other reasons, doing so 'would be the course of action most consistent with the interest of judicial economy.'" <u>See</u> <u>Thomas v. Kroger Co.</u>, 24 F.3d 147, 149 (11th Cir. 1994) (quoting <u>Matia v. Carpet Transp., Inc.</u>, 888 F.2d 118, 119 (11th Cir. 1989); <u>see</u> <u>also</u> <u>Wood v. Fla. Atl. Univ. Bd. of Trustees</u>, 432 F. App'x 812, 815 (11th Cir. 2011). Notably, Riley did not reassert this untimeliness argument in her subsequent Response to Trinko, and at no point did she identify any prejudice to her by this minimal delay. The Court finds consideration of the Trinko Motion, which largely repeats the arguments of the timely-filed Donatelli Motion, is in the interest of judicial economy.

A plaintiff makes a prima facie showing by presenting evidence sufficient to withstand a motion for directed verdict on the issue of personal jurisdiction. Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988). Thus, "[t]he district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits[,]" and "where the evidence presented by the parties' affidavits . . . conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff." Id. (citing Delong Equip. Co., 840 F.2d at 845). This construction in favor of the plaintiff is particularly necessary where the jurisdictional questions are intertwined with the merits of a case. See Delong Equip. Co., 840 F.2d at 845. Here, upon consideration of the Rivers Motion and Response to Rivers, the Court determines that an evidentiary hearing is not warranted. Thus, the Court considers whether Riley has made a prima facie showing of personal jurisdiction as to Rivers.

## B. Applicable Law

In considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), courts conduct a two-part analysis. [8] First, the Court must determine "whether the applicable statute potentially confers jurisdiction over the defendant . . . ." See Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 942 (11th Cir. 1997). "When a federal statute provides for nationwide service of process, it becomes the statutory

---

[8] The Supreme Court distinguishes between two types of personal jurisdiction: "specific or case-linked jurisdiction and general or all-purpose jurisdiction." See BNSF Ry. Co. v. Tyrrell, No. 16-405, 581 U.S. ____, slip op. at 10 (May 30, 2017). "Specific personal jurisdiction is founded on a party's contacts to the forum state that are related to the cause of action." See Delong Equip. Co., 840 F.2d at 853. Whereas, "[g]eneral personal jurisdiction arises from a party's contacts to the forum state that are unrelated to the litigation; the test for general jurisdiction is whether the party [has] had 'continuous and systematic' general business contacts with the forum state." Id. (quoting Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 438 (1952)). Although Riley does not specify whether she intends to rely on general or specific personal jurisdiction, as the Amended Complaint contains no allegations indicating that Rivers has had any contact with the State of Florida outside of her connection to Riley, only the propriety of specific personal jurisdiction is at issue here.

basis for personal jurisdiction."  Id.; see also Rule 4(k)(1)(A), (C) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located; . . . or (C) when authorized by a federal statute.").  In the absence of such a statute, the Court turns to the law of the state where it is located.  See Delong Equip. Co., 840 F.2d at 847; Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626-27 (11th Cir. 1996) ("When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) . . . directs us to look to the state long-arm statute in order to determine the existence of personal jurisdiction."); see also Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014).  Second, the Court must consider whether exercising personal jurisdiction over Defendants "would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'" Mut. Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1319 (11th Cir. 2004) (quoting Sculptchair, Inc., 94 F.3d at 626).  "Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 256 (11th Cir. 1996) (internal quotations omitted).

Riley asserts claims against Rivers pursuant to 42 U.S.C. § 1983.  See Amended Complaint at 16, 22.  Because this statute does not provide for nationwide service of process, the Court looks to Florida's long-arm statute, section 48.193 of the Florida Statutes, as a basis for exercising personal jurisdiction.  See Stroman Realty, Inc. v.

Wercinski, 513 F.3d 476, 482 (5th Cir. 2008) ("Because 42 U.S.C. § 1983 lacks a provision for service of process, federal courts adopt state jurisdictional statutes to reach out-of-state defendants.") (internal footnote omitted); see also Courboin v. Scott, 596 F. App'x 729, 732 (11th Cir. 2014) (explaining that because the federal statute at issue "does not have a nationwide service-of-process provision," the court must "look to the state long-arm statute as a basis for exercising jurisdiction"). The Florida long-arm statute provides that:

> [a] person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from [the enumerated acts.]

See Fla. Stat. § 48.193(1)(a). Because Riley fails to address personal jurisdiction in any of her filings, she has not identified which of the enumerated acts she contends is applicable here. Nevertheless, upon careful review of the record before the Court, for the reasons set forth below, the Court finds that personal jurisdiction is lacking because Riley cannot satisfy the due process prong of the analysis, and as such, the Court need not address the Florida long-arm statute. See Smith v. Poly Expert, Inc., 186 F. Supp. 3d 1297, 1300 (N.D. Fla. May 16, 2016); see also Robinson, 74 F.3d at 256 (instructing that a court may exercise personal jurisdiction over a defendant only if both prongs of the analysis are satisfied).

As stated above, for a court to exercise personal jurisdiction over a defendant, the Due Process Clause of the Fourteenth Amendment to the United States Constitution "requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'" Mut. Serv. Ins. Co., 358 F.3d at 1319 (quoting Sculptchair, Inc., 94 F.3d at 626). A determination of whether exercising personal jurisdiction comports with

the requirements of due process requires a two-part inquiry.  See Sculptchair, Inc., 94 F.3d

at 630-31 (11th Cir. 1996).  First the Court looks to see whether Rivers has sufficient

"minimum contacts" with the state of Florida.  See id. at 630.  In Licciardello v. Lovelady,

544 F.3d 1280 (11th Cir. 2008), the Eleventh Circuit explained that:

> [t]he Constitution prohibits the exercise of personal jurisdiction over a
> nonresident defendant unless his contact with the state is such that he has
> "fair warning" that he may be subject to suit there.  This "fair warning"
> requirement is satisfied if the defendant has "purposefully directed" his
> activities at residents of the forum, and the litigation results from alleged
> injuries that "arise out of or relate to" those activities.  In this way, the
> defendant could have reasonably anticipated being sued in the forum's
> courts in connection with his activities there.

Licciardello, 544 F.3d at 1284 (internal citations omitted).  Second, the Court determines

whether the exercise of jurisdiction over the defendant "would offend 'traditional notions of

fair play and substantial justice.'"  Sculptchair, Inc., 94 F.3d at 630-31 (quoting Robinson,

74 F.3d at 258).  Factors relevant to this inquiry "include 'the burden on the defendant, the

interests of the forum . . . , and the plaintiff's interest in obtaining relief.'"  See id. at 631

(quoting Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 113 (1987)).

Turning first to the "minimum contacts" prong, "[j]urisdiction may be constitutionally

asserted over the nonresident defendant whenever he has by his own purposeful conduct

created a 'substantial connection' with the forum state."  Licciardello, 544 F.3d at 1285.

Indeed, even a single act can support jurisdiction, "so long as it creates a substantial

connection with the forum."  Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462,

475 (1985)).  Significantly, "[i]ntentional torts are such acts, and may support the exercise

of personal jurisdiction over the nonresident defendant who has no other contacts with the

forum."  Id. (citing Calder v. Jones, 465 U.S. 783, 790 (1984)).  In such intentional tort

cases, the Eleventh Circuit evaluates the defendant's connection with the forum using the

"effects test" set forth by the Supreme Court in <u>Calder</u>. <u>See</u> <u>Licciardello</u>, 544 F.3d at 1288 (finding that allegations of "the commission of an intentional tort, expressly aimed at a specific individual in the forum whose effects were suffered in the forum" satisfied the <u>Calder</u> "effects test"); <u>Calder</u>, 465 U.S. at 788-89; <u>see also</u> <u>Oldfield v. Pueblo De Bahia Lora, S.A.</u>, 558 F.3d 1210, 1220 n.28 (11th Cir. 2009); <u>Brennan v. Roman Catholic Diocese of Syracuse N.Y., Inc.</u>, 322 F. App'x 852, 856 (11th Cir. 2009).[9] Specifically, to satisfy the "minimum contacts" prong, the <u>Calder</u> "effects test" requires a plaintiff to demonstrate that the defendant committed a tort that was: "(1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." <u>See</u> <u>Licciardello</u>, 544 F.3d at 1286.

Significantly, in <u>Walden</u>, the Supreme Court emphasized that the "effects" of a defendant's intentional conduct must <u>connect the defendant to the forum</u>, not just to a plaintiff who lives there. <u>See</u> <u>Walden</u>, 134 S. Ct. at 1124. As such, "mere injury to a forum resident is not a sufficient connection to the forum." <u>Id.</u> at 1125. The <u>Walden</u> Court explained that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." <u>Id.</u> Indeed, "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." <u>Id.</u> at 1122. As such,

---

[9]     On the other hand, in cases of negligence, the Court applies a different test:

>    Minimum contacts are constitutionally sufficient for specific personal jurisdiction when (1) there "exist[s] some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . ., thus invoking the benefits and protections of its laws[,]" and "the defendant's contacts with the forum . . . relate to the plaintiff's cause of action or have given rise to it."

<u>Ellis v. Jackson Nat'l Life Ins. Co.</u>, No. 2:11-cv-1064-WKW, 2012 WL 3777150, at *6 n. 6 (M.D. Ala. Aug. 30, 2012) (alterations in original) (quoting <u>Oldfield</u>, 558 F.3d at 1220).

while "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties," "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." <u>Id.</u> at 1123.

## C.    Discussion

Here, Riley asserts that Rivers is a New York citizen. <u>See</u> Amended Complaint ¶ 4. According to the Amended Complaint, and the Riley Declaration, the State of Florida is connected to this case only insofar as Riley is a citizen of Florida, lives here and received mail here. <u>See</u> Amended Complaint ¶¶ 3-5; Riley Decl. ¶¶ 3, 5-6. Specifically, Riley maintains that Rivers' actions affected Riley's rights in Florida, Rivers sent court filings to Riley in Florida, and Rivers knew Riley lived in Florida. <u>See</u> Riley Decl. ¶¶ 3, 5-6. Nonetheless, Rivers' purportedly wrongful actions took place in New York, as part of a lawsuit that Riley filed in New York, in connection with real property located in New York. As such, Rivers' alleged misconduct was not aimed or directed toward Florida, nor even directed at Riley in Florida. Rather, Rivers' conduct was directed at Riley only to the extent Riley was exerting her presence in New York, by seeking possession of real property in New York, through the court system in New York, although she may have been living in Florida.

Based on the foregoing, the Court finds that the only link between Rivers and Florida is that Riley experienced the effects of her alleged intentional wrongdoing while Riley was living in Florida. However, mere injury to Riley in Florida, without more, is not a sufficient connection to satisfy the minimum contacts requirement of the Due Process Clause. <u>See</u> <u>Walden</u>, 134 S. Ct. at 1125. Indeed, Rivers could not have reasonably anticipated that her actions in connection with New York lawsuits over New York property would subject her to

being haled into court in Florida.  See id. at 1123 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."); see also Courboin, 596 F. App'x at 735 ("In essence, jurisdiction is proper only 'where the defendant's contacts with the forum proximately result from actions by the defendant himself that create a substantial connection with the forum state,' such that the defendant 'should reasonably anticipate being haled into court there.'" (quoting Madara v. Hall, 916 F. 2d 1510, 1516-17 (11th Cir. 1990))).  Because Riley fails to establish a constitutionally sufficient relationship between Rivers, Florida, and this litigation, see Walden, 134 S. Ct. at 1121, the Court concludes that it lacks personal jurisdiction over Rivers and the Rivers Motion is due to be granted on this basis.[10]

## IV.  Venue

### A.  Standard of Review

When a defendant brings a motion to dismiss for improper venue under Rule 12(b)(3), "the plaintiff has the burden of showing that venue in that forum is proper." Prou v. Giarla, 62 F. Supp. 3d 1365, 1379 (S.D. Fla. 2014) (internal quotation marks omitted). Although in determining whether a plaintiff has made such a showing the court must accept the facts alleged in the complaint as true, it must do so "only to the extent [the facts] are uncontroverted by defendant's affidavits." Estate of Myhra v. Royal Caribbean Cruises, Ltd., 695 F.3d 1233, 1239 (11th Cir. 2012) (internal quotation marks and alterations

---

[10] The Court notes that based on the allegations of the Amended Complaint, it appears that Riley failed to establish a basis for the exercise of personal jurisdiction over Defendants Donatelli and Trinko as well. Nonetheless, as these Defendants did not raise lack of personal jurisdiction in their Motions to Dismiss, this defense is waived.  See Rule 12(b)(2), (h)(1); see also Lipofsky v. N.Y. State Workers Compensation Bd., 861 F.2d 1257, 1258 (11th Cir. 1988) (explaining that lack of personal jurisdiction is a "waivable defect" which is waived "when a defendant files a responsive pleading or Rule 12 motion failing to assert [this defense]").

omitted). Nevertheless, when faced with conflicting affidavits, in the absence of an evidentiary hearing, the court will "give greater weight to the plaintiff's version of the jurisdictional facts and [ ] construe such facts in the light most favorable to the plaintiff." Id. (internal quotation marks omitted). Also, when a court resolves a motion to dismiss based on improper venue without an evidentiary hearing, "the plaintiff must present only a prima facie showing of venue" to survive the motion. Home Ins. Co. v. Thomas Indus., Inc., 896 F.2d 1352, 1355 (11th Cir. 1990) (internal quotation marks omitted). As the Eleventh Circuit Court of Appeals has explained, "Rule 12(b)(3) is a somewhat unique context of dismissal in which [courts] consciously look beyond the mere allegations of the complaint, and, although [courts] continue to favor the plaintiff's facts in the context of any actual evidentiary dispute, [they] do not view the allegations of the complaint as the exclusive basis for decision." Id. Notably, when a case involves multiple claims, a plaintiff must establish the propriety of venue for each claim. See Ford v. Supreme Court of Fla., No. 6:06-cv-3-Orl-31JGG, 2006 WL 1382075, at *5 (M.D. Fla. May 18, 2006); Burger King Corp. v. Thomas, 755 F. Supp. 1026, 1029 (S.D. Fla. 1991); Neizil v. Williams, 543 F. Supp. 899, 904 (M.D. Fla. 1982).

### B. Discussion

Riley brings several claims against Donatelli and Trinko pursuant to 42 U.S.C. § 1983 for deprivation of her civil rights. Although unclear, it appears she also may be alleging claims of fraud, conspiracy to violate her civil rights under 42 U.S.C. § 1985, and violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1964, against these Defendants. See Amended Complaint at 17-18, 20-25. As §§ 1983 and 1985 do not contain separate venue provisions, those claims, as well as any state law

fraud claim, are governed by the general venue statute, 28 U.S.C. § 1391.  See Atl. Marine

Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex., 134 S.Ct. 568, 577 n.2 (2013)

("Section 1391 governs 'venue generally,' that is, in cases where a more specific venue

provision does not apply.").  The relevant portion of § 1391 provides that:

> A civil action may be brought in—
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)-(3).  In addition, the RICO Act has its own venue provision which

allows the institution of a RICO action against a person "in the district court of the United

States for any district in which such person resides, is found, has an agent, or transacts

his affairs."  See 18 U.S.C. § 1965(a).[11]

---

[11]  There is no binding Eleventh Circuit precedent addressing whether the RICO venue provision is exclusive. However, several courts have concluded that both the RICO provision and § 1391 apply where a RICO claim is at issue. See, e.g., Chambers v. Mayo, No. 3:10-cv-525-CWR-LRA, 2011 WL 1578512, at *3 (S.D. Miss. Apr. 27, 2011)); Modaressi v. Vedadi, 441 F. Supp. 2d 51, 54–55 (D.D.C. 2006) (citing cases); Multi-Media Int'l, LLC v. Promag Retail Servs., 343 F. Supp. 2d 1024, 1034 n.8 (D. Kan. 2004); Van Schaick v. Church of Scientology of Calif., Inc., 535 F. Supp. 1125, 1133 n.6 (D. Mass. 1982); Farmers Bank of State of Del. v. Bell Mortg. Corp., 452 F. Supp. 1278, 1280–81 (D. Del. 1978) (citing cases). That conclusion is consistent with the permissive wording of § 1965(a) (which states that an action "may be instituted" in the identified fora) as well as its legislative history, which indicates Congress's intent to provide a liberal venue standard modeled on the venue provisions of the antitrust laws. See Farmers, 452 F. Supp. at 1280. With respect to antitrust actions, the Eleventh Circuit has concluded that the antitrust venue provisions supplement rather than supplant the general venue provisions in § 1391. See Delong Equip. Co. v. Wash. Mills Abrasive Co., 840 F.2d 843, 855 (11th Cir. 1988) (finding that venue may be established under either Clayton Act or § 1391).

In the Amended Complaint, Riley alleges that venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because "the cause of action arose within the Middle District of Florida and the Eastern District of New York Electronically and through the United States Mail." See Amended Complaint ¶ 3.  As such, it appears that Riley relies solely on § 1391(b)(2) as her basis for contending that the Middle District of Florida is a proper venue. Riley does not cite to the RICO venue provision, nor does she allege that Donatelli or Trinko reside, are found, have agents, or transact their affairs in Florida.  To the contrary, Riley alleges that these individuals are attorneys in New York, with principal places of business in New York, and New York citizens. See Amended Complaint ¶¶ 4, 6, 8.  Thus, Riley has neither invoked the RICO venue provision, nor alleged any facts in an attempt to satisfy its requirements, and as such, the Court will consider only whether Riley has established the Middle District of Florida as a proper venue under § 1391(b)(2).[12]

Initially, the Court notes that the language of 28 U.S.C. § 1391(b)(2) "contemplates some cases in which venue will be proper in two or more districts."  Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371 (11th Cir. 2003); 14D Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 3806 (3d ed.) ("Under the statute in force since [the 1990 amendment], it is clear that a suit may be brought in more than one district."); 28 U.S.C. § 1391, Commentary on 1988 and 1990 Revisions ("[T]here may be several districts that qualify as a situs of such 'substantial' activities.").  "Indeed, under § 1391, a plaintiff does not have to select the venue with the most substantial nexus to the

---

[12] In addition, as it is undisputed that Defendants do not reside in Florida, Riley cannot establish venue here under § 1391(b)(1).  Moreover, because this action could have been brought in the Eastern District of New York under § 1391(b)(2), Riley cannot rely on § 1391(b)(3). See 28 U.S.C. § 1391(b)(3) (allowing venue in the district where any defendant is subject to personal jurisdiction only "if there is no district in which an action may otherwise be brought as provided in this section"); Atl. Marine, 134 S. Ct. at 578.

dispute, as long as she chooses a venue where a substantial part of the events giving rise to the claim occurred." Morgan v. N. Miss. Med. Ctr., 403 F. Supp. 2d 1115, 1122 (S.D. Ala. 2005) (emphasis in original). However, in determining whether venue is proper in a particular district, the Eleventh Circuit has made clear that under § 1391(b)(2), "only those acts and omissions that have a close nexus to the wrong" are "relevant" in determining where a substantial part of the events giving rise to the claim occurred. Jenkins Brick, 321 F.3d at 1372; see also S.L. Sakansky & Assocs., Inc. v. Allied Am. Adjusting Co., No. 3:05-CV-708-J-32MMH, 2006 WL 948055, at *3 (M.D. Fla. April 12, 2006) (finding venue proper because resolution of the case will require proof "derived from work performed (or not performed) in this district"). Additionally, a court must focus its analysis on the activities of the defendant which give rise to the claim, not those of the plaintiff. Jenkins Brick, 321 F.3d at 1371-72 (endorsing the Eighth Circuit's view that the statute protects defendants, and Congress "'meant to require courts to focus on relevant activities of the defendant, not of the plaintiff'") (quoting Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995)).[13]

Emphasizing the importance of focusing on the defendant's actions giving rise to the claim at issue when identifying the proper venue, the Eleventh Circuit has criticized a line of cases "epitomized" by the "'minimum contacts' personal jurisdiction" approach to venue under § 1391(b)(2) expressed in U.S. Surgical Corp. v. Imagyn Med. Tech., 25 F. Supp. 2d 40, 45 (D. Conn. 1998). Jenkins Brick, 321 F.3d at 1372. In U.S. Surgical Corp., the trial court found venue proper in the District of Connecticut under § 1391(b)(2) despite

---

[13] In Woodke, the Eighth Circuit opined, "While the present venue statute was certainly intended to expand the number of venues available to a plaintiff, we are reluctant to impute to Congress an intent to abandon altogether the protection of defendants as a relevant consideration in venue matters . . . [I]f Congress had wanted to lay venue where the plaintiff was residing when he was injured, it could have said so expressly." Woodke, 70 F.3d at 985.

the fact that the California defendant performed and allegedly breached his employment contract in California.  U.S. Surgical Corp., 25 F. Supp. 2d at 45.  In doing so, the Connecticut court relied on the fact that the contract at issue was negotiated and executed in Connecticut, and the defendant attended training classes and sales meetings in Connecticut.  Id.  The Eleventh Circuit found this analysis to be "incorrect[,]" noting that "its flavor was that of a 'minimum contacts' personal jurisdiction analysis rather than a proper venue analysis."  Jenkins Brick, 321 F.3d at 1372.  Returning to the maxim that "[o]nly the events that directly give rise to a claim are relevant" in the venue analysis, the court expressed its disapproval of the notion that "a defendant's attendance at sales meetings is an 'event giving rise to a claim' for breach of a covenant not to compete."  Id. at 1371, 1372.  Thus, in accordance with Eleventh Circuit precedent, the Court must focus its venue analysis not on all aspects of the relationships between the parties, but on the location of the acts and omissions giving rise to the claims asserted, those actions with a close nexus to the wrong.

Upon review of the Amended Complaint, it is apparent that no event, much less a "substantial part," of the events giving rise to Riley's claims occurred in Florida.  At most, Riley received correspondence related to the New York lawsuit in Florida, and may have felt the effects of the purportedly wrongful conduct while living in Florida.  However, the property at the heart of this dispute is located in New York, and Riley's "quiet title" lawsuit, out of which her current claims arose, occurred in New York.  Indeed, Riley's § 1983, § 1985, and fraud claims against Donatelli and Trinko are premised on her contention that they "interfered" in that New York lawsuit by making false and fraudulent statements and submitting false documents to the court in New York.  See generally Amended Complaint.

Likewise, Riley's RICO claims, although vague and conclusory, appear to relate to the purported theft of the real property located in New York. See id. at 23-25. Even to the extent Riley contends that Donatelli and Trinko engaged in a "pattern" of such thefts, the Amended Complaint contains no allegations of any such acts taking place outside of New York. Thus, the entirety of the events or omissions giving rise to Riley's claims occurred in New York, specifically, the Eastern District of New York. See Riley Aff., Ex. B. The mere fact that Riley was residing in Florida when she felt the effects of the allegedly wrongful conduct occurring in New York is insufficient to establish Florida as a proper venue. See Woodke, 70 F.3d at 985 (rejecting the plaintiff's argument that venue was proper in a particular district "simply because that was where [the plaintiff] was residing when the" wrongful conduct occurred); Infinite Growth Grp., LLC v. Infinite Growth Assocs., LLC, No. 2:10-cv-85-FTM-29DNF, 2010 WL 3190613, at *3 (M.D. Fla. Aug. 11, 2010) (dismissing complaint for improper venue where no events or omissions material to the claim occurred in Florida and "[t]he best that can be said is that the activities of [the defendant] outside the State of Florida are alleged to have caused injuries to a Florida [company] in Florida"). Accordingly, the Court determines that Riley has failed to carry her burden of showing that venue is proper in this District pursuant to § 1391(b)(2).

Having determined that this District is not a proper venue for this action, the Court next turns to the appropriate remedy. Pursuant to 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Thus, the Court must decide whether to dismiss this case or transfer it to an appropriate venue. Notably, "[a] transfer under § 1406(a) is not

based on the inconvenience of the transferor forum but on the impropriety of that forum." Manley v. Engram, 755 F.2d 1463, 1467 (11th Cir. 1985).  Additionally, although "[t]he interests of justice generally favor transferring a case to the appropriate judicial district rather than dismissing it," "'[t]he decision whether to transfer a case is left to the sound discretion of the district court.'" Hemispherx Biopharma, Inc. v. MidSouth Capital, Inc., 669 F. Supp. 2d 1353, 1359 (S.D. Fla. 2009) (quoting Roofing Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 982, 985 (11th Cir.1982)).  However, transfer under § 1406(a) is subject to certain limitations.  Manley, 755 F.2d at 1467.  For example, a transfer is proper only to a district where the suit might have been filed by the plaintiff.  Id.

Here, both Trinko and Donatelli concede that this action could have been brought in the Eastern District of New York.  See Donatelli Motion at 9; Trinko Motion at 7. Nonetheless, in their Motions, Donatelli and Trinko maintain that the improper venue in this action warrants dismissal.[14]  Notably, they do not address § 1406(a) or otherwise explain why the interest of justice would not warrant transfer to the Eastern District of New York. For her part, Riley maintains that venue in this District is proper, and does not address in the alternative whether the interest of justice warrants transfer.  Upon review of the record in this case, and because none of the parties request transfer, the Court determines that dismissal is appropriate here.  Specifically, the Court finds that Riley has failed to adequately allege any viable claims in the Amended Complaint, and as such, it would not be in the interest of justice to transfer this case.  See Myers v. Doe, No. 1:10-cv-254-MP-

---

[14]    The Court notes that the cases Donatelli and Trinko cite in support of their assertion that dismissal is the proper remedy where venue is improper, which are cases addressing the enforcement of a contractual forum-selection clause, and thus, do not involve Rule 12(b)(3) or § 1406(a), are not helpful here.  See Donatelli Motion at 8 (citing Atl. Marine, 134 S. Ct. at 577 and PNC Bank, N.A. v. Akshar Petrol., Inc., No. 3:13-cv-436-J-34PDB, 2014 WL 1230689, at *2 (M.D. Fla. Mar. 25, 2015)); see also Trinko Motion at 7 (same).

GRJ, 2011 WL 1539758, at *2 (N.D. Fla. Mar. 21, 2011) ("[I]n view of the fact that Plaintiff has not demonstrated any reasons why this case should be transferred and in recognition of the fact that Plaintiff, thus far, has not even alleged any arguable basis to support a claim, the Court concludes that the interests of justice do not favor a transfer but instead favor dismissal."); see also McCain v. Bank of Am., 13 F. Supp. 3d 45, 55 (D.D.C. 2014) ("While 'the standard remedy for improper venue is to transfer the case to the proper court rather than dismissing it,' dismissal is appropriate 'when the outcome is foreordained.'" (internal citations omitted)) (collecting cases).

With respect to Riley's § 1983 claims, Riley fails to allege any facts indicating the involvement of a state actor. Section 1983 "provides individuals with a federal remedy for the deprivation of rights, privileges, or immunities protected by the Constitution or the laws of the United States that are committed under color of state law." Brown v. City of Huntsville, Ala., 608 F.3d 724, 733 n.12 (11th Cir. 2010); see 42 U.S.C. § 1983. Thus, to state a claim for relief under § 1983, a plaintiff must sufficiently allege that he or she was "'deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.'" See Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1276-77 (11th Cir. 2003) (quotation omitted). Significantly, "'[l]ike the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'" See id. at 1277 (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999)). Moreover, "[o]nly in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes." See Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992).

Although Riley includes the term "under color of state law" throughout her Amended Complaint, she does not assert that any Defendant is employed by the government, nor does she allege any facts indicating that any Defendant was acting on behalf of the state. Instead, Riley's claims here are against private attorneys, for actions they took on behalf of a private citizen, in a lawsuit over private property. Riley does not allege any connection between the private attorneys, Trinko and Donatelli, and the government. See Focus on the Family, 344 F.3d at 1277 (addressing the three primary tests to determine whether a private individual engaged in actions attributable to the state). Riley appears to believe that Trinko and Donatelli acted under "color of law" because their purportedly wrongful conduct took place as part of a lawsuit. However, "[u]se of the courts by private parties does not constitute an act under color of state law." See Harvey, 949 F.2d at 1133-34. As the Amended Complaint is devoid of any allegation that could be construed as even suggesting government action, Riley's § 1983 claims are without merit.

In addition, although Riley cites to § 1983 in each count of the Amended Complaint, construing her allegations broadly, it appears she may also be attempting to assert claims against Donatelli and Trinko for conspiracy to interfere with her civil rights in violation of § 1985(3), racketeering in violation of the RICO Act, and fraud. See Amended Complaint at 1, 17-18, 20-22, 23-25. To state a claim for relief under § 1985(3), Riley must allege:

> (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) resulting in an injury to person or property, or a deprivation of any right or privilege of a citizen of the United States.

Kivisto v. Miller, Canfield, Paddock & Stone, PLC, 413 F. App'x 136, 140 (11th Cir. 2011). With respect to the second element, Riley must show that "the deprivation of rights or

privileges occurred as a result of 'some racial, or . . . otherwise class-based, invidiously discriminatory animus behind the conspirators' actions.'" Id. (quoting Childree v. UAP/GA AG CHEM, Inc., 92 F.3d 1140, 1147 (11th Cir. 1996)). Moreover, "[w]hen the alleged § 1985(3) conspirators are private actors, the plaintiff must demonstrate that the conspiracy was aimed at rights constitutionally protected against private impairment." See Jimenez v. Wellstar Health Sys., 596 F.3d 1304, 1312 (11th Cir. 2010). Indeed, "[t]he purpose of § 1985 was to stifle the serious class-based deprivation of constitutional rights by private parties, not to serve as a general federal tort law . . . ." See Trawinski v. United Techs., 313 F.3d 1295, 1299 (11th Cir. 2002). As to her RICO claims, Riley must allege facts demonstrating: "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Kivisto, 413 F. App'x at 138 (quoting Williams v. Mohawk Indus. Inc., 465 F.3d 1277, 1282 (11th Cir. 2006)). To show a "pattern of racketeering" in a RICO case, "'a plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity.'" Id. (quoting Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290-91 (11th Cir. 2010)).

Riley's Amended Complaint is replete with vague, conclusory and general allegations of wrongdoing and conspiracy. However, she offers no factual allegations to support the existence of such a conspiracy. See Am. Dental Ass'n, 605 F.3d at 1293-94 (explaining that "formulaic recitations" of a conspiracy claim are insufficient). Moreover, although the Amended Complaint contains some references to a scheme to rob "the estates of black old and or dead people" and deprive "their black children of their rights, real property and money," see Amended Complaint ¶¶ 6, 8, Riley does not actually allege any facts from which one could draw the inference that the purported conspirators were

motivated by racial animus. See Kearson v. S. Bell Tel. & Tel. Co., 763 F.2d 405, 407 (11th Cir. 1985) ("Although [plaintiff] alleges he is black, there is no fact set forth to suggest that the alleged intent was a product of racial or otherwise class-based animus."); Kivisto, 413 F. App'x at 140. Indeed, Donatelli and Trinko are both alleged to have been acting on behalf of Patricia Rivers, who Riley identifies as a black person. See Amended Complaint ¶¶ 12, 20, 31, 34. Likewise, because Riley broadly alleges that Defendants engaged in a "conspiracy against rights," in violation of the "First, Fourth, Fifth, Seventh, Thirteenth, and Fourteenth Amendments," see Amended Complaint ¶¶ 86-87, 90, it is entirely unclear whether the purported conspiracy was "aimed at rights constitutionally protected against private impairment." See Jimenez, 596 F.3d at 1312; Trawinski, 313 F.3d at 1299.

Similarly, while Riley maintains that Donatelli and Trinko violated RICO by engaging in a "pattern" of stealing titles to real property, she fails to set forth factual allegations supporting the existence of an agreement between Donatelli and Trinko to engage in such an enterprise. See Kivisto, 413 F. App'x at 140.[15] In addition, the Court finds no allegations which demonstrate the existence of continuing criminal activity as is required to satisfy the continuity requirement of a RICO claim. See Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1264-65 (11th Cir. 2004) (discussing the continuity element of a RICO claim).

---

[15]   To the extent Riley also attempts to assert claims for fraud, see Amended Complaint at 20-21, or to premise her RICO claims on predicate acts of mail or wire fraud, she fails to comply with the heightened pleading standards of Rule 9(b). See Rule 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); Am. Dental Ass'n, 605 F.3d at 1291 ("[P]ursuant to Rule 9(b), a plaintiff must allege: '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud.'" (quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997))). While Riley asserts that Defendants made materially false statements and filed false documents with the court in New York, she fails to identify the precise statements or misrepresentations made or the manner in which they misled her.

Indeed, her allegations of wrongdoing are limited to a single incident of purported theft—that of her deceased mother's real property. See id. at 1267 ("[W]here the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time."). While Riley insists this alleged "theft" is part of a pattern, she fails to allege any facts to support her conclusion. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal quotations omitted)). Notably, the Court previously cautioned Riley that she must set forth the factual basis for her claims in sufficient detail, and that vague and ambiguous pleadings were not permitted. See generally Order (Doc. 4), entered July 15, 2016. As Riley has not adequately pled any viable claim for relief thus far, and given that the hyperbolic, inflammatory, conclusory and largely irrelevant arguments in her Responses indicate her inability to do so, the Court determines that the interest of justice does not support transfer of this case. Accordingly, the Court will dismiss this action without prejudice for improper venue.

## V. Sanctions Motions[16]

Last, the Court turns to Defendant, Daniel D. Donatelli, Esquire's, Motion to Remove Filings From the Docket (Doc. 65; Motion to Remove), filed on February 3, 2017, and the

---

[16] Because the Court finds it appropriate to dismiss this action without considering or relying on the extrinsic evidence presented by Donatelli in his Request for Judicial Notice, the Court will deny this Request as moot. Likewise, Defendant, Daniel D. Donatelli, Esquire's, Motion for Final Summary Judgment and Incorporated Memorandum of Law (Doc. 89; Motion for Summary Judgment) is due to be denied as moot in light of the resolution of the Motions to Dismiss. As such, the Court will also deny as moot Riley's motion to strike certain statements in an exhibit to the Motion for Summary Judgment. See Opposed Pro Se Plaintiff's Verified Motion to Strike re 89-3 False and Falsified Statements from Exhibit C—Donatelli Fianal [sic] Summary Judgment Affidavit with Plaintiff's Exhibits A-B (Doc. 102).

pending motions for sanctions.  See Defendant, Daniel D. Donatelli, Esquire's, Motion for Rule 11 Sanctions with Incorporated Memorandum of Law (Doc. 95; Donatelli Motion for Sanctions) and Notice of Filing Complete Exhibit "A" to Document #95 (Doc. 96), both filed May 15, 2017; Pro Se Plaintiff's Verified Response and Verified Counter-Motion for Sanctions to re 95 re 96 Defendant Donatelli's Frivolous Unsupported Motion/Notice for Rule 11 Sanctions (Doc. 101; Riley Motion for Sanctions), filed May 19, 2017.  In the Motion to Remove, Donatelli requests that the Court remove Riley's filings at docket entries 34, 36, 38, 40, 46, and 48-3.  See Motion to Remove at 1-2.  Donatelli contends that these filings contain scandalous accusations and inflammatory comments which harass Donatelli, various members of the judiciary, and Court personnel.  See generally Motion to Remove.  While the Court does not disagree that the rhetoric throughout Riley's filings is inappropriate, the Court has determined that this action is due to be dismissed, and as such, finds it unnecessary to order the removal of these filings from the docket.

With respect to Donatelli's Motions for Sanctions, he requests that the Court "enter an Order striking the filings, prohibiting Ms. Riley from filing further papers, motions or pleadings without benefit of counsel or prior leave of this Court, and dismissing the action with prejudice due [to] the frivolous and malicious nature of the claims asserted."  See Donatelli Motion for Sanctions at 12.  Specifically, Donatelli asks the Court to strike Riley's filings of "March 27, 2017, March 28, 2017, and April 17, 2017."  Id. at 1.  Donatelli maintains that the requested relief is "necessary due to the false and inflammatory accusations contained in the documents filed by the Plaintiff."  Id.  However, for the reasons stated above, the Court finds it unnecessary to strike Riley's prior filings.  Additionally, in light of the undersigned's determination that this Court is an improper venue for this case,

the Court declines to impose the sanction of dismissal with prejudice at this time. As stated above, the conduct at issue in this lawsuit relates entirely to Riley's prior lawsuit filed in New York, and much of Riley's invective is directed toward the lawyers and judiciary involved in that lawsuit. As such, this Court is of the view that the courts in New York are better positioned to address the issue of sanctions against Riley should she elect to re-file this case in that jurisdiction and persist in her inflammatory rhetoric.

As to Donatelli's request that the Court place restrictions on Riley's ability to make any future filings, the Court concludes that this sanction is not warranted at this time. Although Riley has filed seven lawsuits in the Middle District of Florida, she has done so over the span of seventeen years, and while unsuccessful, her lawsuits generally have not involved repeated claims. See Riley v. First Union Nat'l Bank, No. 3:99-1269-Civ-J-20B (M.D. Fla. filed Dec. 29, 1999); Riley v. First Union Nat'l Bank, No. 3:00-442-Civ-J-20C (M.D. Fla. filed Apr. 26, 2000); Riley v. City of Jacksonville, No. 3:02-cv-377-J-21HTS (M.D. Fla. filed Apr. 18, 2002); Riley v. Duval Cnty. Chief Sheriff, No. 3:10-cv-347-J-34TEM (M.D. Fla. filed Apr. 22, 2010; Riley v. Rutherford, No. 3:10-cv-644-J-34MCR (M.D. Fla. filed July 26, 2010; Riley v. Cardozo, No. 3:16-cv-961-J-34MCR (M.D. Fla. filed July 28, 2016). Notably, she has filed only the instant lawsuit and one other in this District in the last six years. As such, the Court cannot find, at this time, that Riley has engaged in such a vexatious pattern of litigation as to warrant the extreme sanction of restricting her access to the Court. Cf. Martin-Trigona v. Shaw, 986 F.2d 1384, 1385-86 (11th Cir. 1993) (discussing a vexatious litigant injunction against a pro se plaintiff who had "sued literally hundreds, if not thousands, of attorneys, judges, their spouses, court officials, and other human beings"); Cofield v. Ala. Pub. Serv. Comm'n, 936 F.2d 512, 514, 517-18 (11th Cir.

1991) (upholding an injunction requiring prescreening of vexatious litigant's future filings where litigant had filed over 100 cases in the federal and state courts of Alabama); Shell v. U.S. Dep't of Housing & Urban Dev., 355 F. App'x 300, 304 (11th Cir. 2009) (upholding injunction where plaintiff had filed seven cases against the same defendant in less than five years); Thompson v. Fla. Bar, No. 6:10cv442-DHB-JEG, 2010 WL 5497673, at *1-11 (M.D. Fla. Nov. 16, 2010) (imposing an injunction where plaintiff had filed twelve lawsuits against the same set of defendants over the span of four years in the Florida federal courts, as well as numerous other cases in other courts).[17]  Nonetheless, the Court is concerned by the tone of Riley's submissions.  Personal attacks, accusations and insults will not gain her the relief she seeks and, if she continues in this manner following the dismissal of this lawsuit, the Court will not hesitate to impose sanctions.[18]  While she may disagree with the Court's findings, the appropriate recourse is simply to appeal those rulings.  In light of the foregoing, it is

**ORDERED**:

1. Pro Se Defendant Patricia A. Rivers' Motion to Dismiss Plaintiff's Amended Verified Complaint, and Incorporated Memorandum of Law (Doc. 90) is **GRANTED** to the extent

---

[17]      Indeed, the cases Donatelli cites in support of his request for an injunction involved far greater vexatious conduct than is present on the record here.  See Donatelli Motion for Sanctions at 10-12 (citing Procup v. Strickland, 792 F.2d 1069, 1073 (11th Cir. 1986) (discussing a litigant who had filed "176 cases in the Jacksonville Division of the Middle District of Florida alone," none of which had reached a trial on the merits); Cuyler v. Presnell, No. 6:11-cv-623-ORL-22DAB, ECF No. 11 (M.D. Fla. Aug. 4, 2011) (imposing injunction where plaintiffs had engaged in a pattern of filing lawsuits against the judges that ruled against them); In re Roy Day Litig., 976 F. Supp. 1455 (M.D. Fla. 1995) (addressing a pro se litigant who had filed "at least sixty-two actions" in a single district over several years)).

[18] As to the Riley Motion for Sanctions, the Court has reviewed the Motion and finds no basis for the imposition of sanctions against Donatelli.  Riley appears to contend that sanctions are warranted because Donatelli and his counsel have committed fraud on the Court.  See Riley Motion for Sanctions at 4-5.  However, she fails to support these accusations with any evidence beyond her own self-serving declarations.  The Court has reviewed the Motion and the record in this case and finds Riley's accusations to be entirely without merit.

that Plaintiff's claims against Rivers are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

2. Defendant, Daniel D. Donatelli, Esquire's Motion to Dismiss Plaintiff's Amended Verified Complaint, and Incorporated Memorandum of Law (Doc. 13), and Defendant Curtis V. Trinko, Esquire's Motion to Dismiss Plaintiff's Amended Verified Complaint, and Incorporated Memorandum of Law (Doc. 17) are **GRANTED** to the extent Plaintiff's claims against Daniel D. Donatelli and Curtis V. Trinko are **DISMISSED WITHOUT PREJUDICE** for improper venue.

3. Defendant, Daniel A. Donatelli, Esquire's, Notice of Filing Exhibit A in Support of Defendant's Motion to Dismiss Plaintiff's Verified Amended Complaint with Incorporated Memorandum of Law (Doc. 23), construed as a motion for the Court to take judicial notice, <u>see</u> Order (Doc. 25), is **DENIED as moot**.

4. Defendant, Daniel D. Donatelli, Esquire's, Motion to Remove Filings from the Docket (Doc. 65) is **DENIED**.

5. Defendant, Daniel D. Donatelli, Esquire's, Motion for Final Summary Judgment and Incorporated Memorandum of Law (Doc. 89) and Opposed Pro Se Plaintiff's Verified Motion to Strike re 89-3 False and Falsified Statements from Exhibit C—Donatelli Fianal [sic] Summary Judgment Affidavit with Plaintiff's Exhibits A-B (Doc. 102) are **DENIED, as moot**.

6. Defendant, Daniel D. Donatelli, Esquire's, Motion for Rule 11 Sanctions with Incorporated Memorandum of Law (Doc. 95) is **DENIED**.

7. Pro Se Plaintiff's Verified Response and Verified Counter-Motion for Sanctions to re 95 re 96 Defendant Donatelli's Frivolous Unsupported Motion/Notice for Rule 11 Sanctions is **DENIED**.

8. The Clerk of the Court is **directed** to terminate any remaining pending motions and deadlines, enter judgment dismissing the action without prejudice, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 3rd day of August, 2017.

MARCIA MORALES HOWARD
United States District Judge

lc11
Copies to:

Counsel of Record
Pro Se Parties